IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| KENNETH GRABLE, et al.,   )<br>                                                  )<br>     Plaintiffs,              )<br>                                                  )<br>     v.                         )     CIVIL ACTION NO. 5:21-cv-95 (MTT)<br>                                                  )<br>CP SECURITY GROUPS, INC.,   )<br>                                                  )<br>     Defendant.              )<br>_____) | |

## ORDER

Plaintiffs Kenneth Grable and Arthur Redding, individually and on behalf of all others similarly situated ("plaintiffs"), move for default judgment against defendant CP Security Groups, Inc.  Doc. 57.  For the following reasons, that motion (Doc. 57) is **GRANTED** as to plaintiffs Grable, Redding, Merrick Robinson, and Ulysses Finnell.

## I. BACKGROUND

**A. Factual Background**

The allegations of the complaint, deemed admitted because of CP Security's default, establish these facts.  CP Security "offers private security services" to businesses.  Doc. 1 ¶ 11.  Plaintiffs were employed as security officers at CP Security.[1] *Id*. ¶ 13.  They often worked "overnight shifts, as well as twelve-hour shifts seven days per week." *Id*. ¶ 14.  This resulted in plaintiffs working about "70 to 80 hours or more each workweek." *Id*. ¶ 15.  However, CP Security did not provide "overtime pay for the overtime that they actually worked." *Id*. ¶ 47.

---

[1] Grable, Redding, Robinson, and Finnell are no longer employed by CP Security.  Docs. 60-1 ¶ 4; 63 ¶ 4; 63-1 ¶ 4; 63-2 ¶ 4.

CP Security "was not only aware" the plaintiffs "worked hours that should have been considered overtime, but generally assigned employees to work time constituting overtime." *Id*. ¶ 48. However, CP Security did not "make, keep, maintain, and preserve accurate records of the hours worked by" the plaintiffs. *Id*. ¶ 52. And "[o]n a number of occasions, [p]laintiffs … reviewed their time records and … observed that changes [were] made to reduce the number of hours listed that [p]laintiffs actually worked." *Id*. ¶ 33. Thus, CP Security "not only failed to keep accurate records of its employees' time worked, [it] took affirmative steps to fail to keep and maintain accurate records of [p]laintiffs' time worked." *Id*. ¶ 34.

After Redding "realized that there might be a problem with his overtime pay," he "sent a letter to [CP Security] … to inquire as to his overtime pay." *Id*. ¶¶ 20-21. CP Security did not respond. *Id*. ¶ 21. He "also asked about his overtime compensation in an in-person conversation with" CP Security's founder, owner, and Chief Executive Officer ("CEO"), Christopher Paul. *Id*. ¶ 6, 10, 22. Paul "said that Mr. Redding was not working overtime; rather, he was working 'extra time.'" *Id*. ¶ 22. Grable also asked Paul about overtime. *Id*. ¶ 24. "Paul told Mr. Grable that [CP Security] was being investigated and audited" and "auditors had told him that he was not permitted to give employees 'extra time.'" *Id*. ¶¶ 24-25. However, "[p]laintiffs have reason to believe that [CP Security was] not actually under audit" and "Paul said there was an audit in an attempt to try to convince [p]laintiffs that regulators were already looking into the matter and to otherwise discourage [p]laintiffs from making another complaint." *Id*. ¶ 27. Paul also "chastised Mr. Grable for discussing matters involving compensation with other employees." *Id*. ¶ 26. As a result of their questioning, and filing this lawsuit, CP

Security took "away hours from" Grable and Redding.  *Id*. ¶ 29; Docs. 63-1 ¶¶ 28-29; 63-2 ¶¶ 31-33.

**B. Procedural History**

On March 19, 2021, Grable and Redding, individually and on behalf of all others similarly situated, filed suit against CP Security alleging Fair Labor Standards Act ("FLSA") overtime, minimum wage, and retaliation claims.  Doc. 1.  After CP Security failed to waive service, the plaintiffs served CP Security on May 12, 2021.  Docs. 3 at 2; 4.  CP Security did not file an answer or otherwise responsive pleading within 21 days of service and default was entered against it on June 3, 2021.  Doc. 5; Fed. R. Civ. P. 12(a)(1)(A).

The Court stayed the case on August 27, 2021 pending certification of the collective action.  Doc. 16.  On January 14, 2022, the Court conditionally certified the following FLSA collective:

> [a]ll persons who worked for Defendant as Security Officers, or other positions with similar titles and/or duties, who: 1) worked in excess of forty hours in a workweek, but were not compensated at a rate of time-and-one-half, at any time in the three (3) years prior to the commencement of this action; 2) were not compensated at least at a rate of minimum wage for any hours actually worked at any time in the three (3) years prior to the commencement of this action; and/or 3) questioned Defendant about matters involving compensation or complained, either internally or externally, about their compensation and were then subjected to some adverse action as a result[.]

Doc. 20 at 2.  The Court held a contempt hearing on July 21, 2022 regarding CP Security's failure to comply with the Court's orders to reimburse the plaintiffs for service expenses and provide employee information to the plaintiffs.  Docs. 24; 32.  Another contempt hearing was held on September 22, 2022 after CP Security still had not provided employee information to the plaintiffs.  Doc. 37.  Following this hearing, the

-3-

plaintiffs received the necessary information from CP Security.  The stay was lifted on December 12, 2022.  Doc. 38.  In December 2022 and February 2023, Therese Hollingshead, Jimmy Mitchell, Robinson, Andre Smith, Robert Wilson, Shambretta Young, and Finnell opted in as plaintiffs.  Docs. 39-2; 40-2.

Because months passed and the plaintiffs had not moved for default judgment, the Court ordered the plaintiffs to show cause as to why the case should not be dismissed for failure to prosecute.  Doc. 41.  The plaintiffs informed the Court they needed to obtain more information from CP Security.  Doc. 42.  After CP Security failed to provide that information, the Court held a hearing on the plaintiffs' motion to compel on December 20, 2023.  Doc. 49.  The plaintiffs received some, but not all, of the necessary information from CP Security after the hearing.  Doc. 50 at 3.

The plaintiffs moved for default judgment on February 12, 2024.  Doc. 57.  The same day, plaintiffs' counsel notified the Court of Mitchell's January 5, 2024 death.[2]  Docs. 56; 56-1.  The Court held an evidentiary hearing on damages on February 22, 2024.  Doc. 69.  At that hearing, the Court confirmed that (1) Hollingshead and Smith did not qualify as class members, (2) Grable and Redding were the only plaintiffs pursuing retaliation claims, and (3) no plaintiff was pursuing a minimum wage claim.  *See id*.  Grable, Redding, Robinson, and Finnell offered evidence in support of their claims.[3]  Docs. 60-1; 63; 63-1; 63-2.

---

[2] The suggestion of Mitchell's death was filed on February 12, 2024.  Doc. 56.  Plaintiffs' counsel informed the Court that he is unaware of whether a representative has been appointed.  *See* Doc. 69 at 1.

[3] Because Hollingshead and Smith are not class members, Young and Wilson failed to provide evidence in support of their claims, and no plaintiff is pursuing a minimum wage claim, those plaintiffs and that claim are **DISMISSED without prejudice**.  Hereinafter, "plaintiffs" refers to Grable, Redding, Robinson, and Finnell.

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court must enter a party's default if that party's failure to plead or otherwise defend an action against it "is shown by affidavit or otherwise." After default has been entered, the Clerk may enter a default judgment on the plaintiff's request if the claim "is for a sum certain or a sum that can be made certain by computation," as long as the party is not a minor or incompetent and has not made an appearance. Fed. R. Civ. P. 55(b)(1). In all other cases, the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b)(2). The Court must hold an evidentiary hearing to determine damages unless all the essential evidence is already in the record. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("We have held that no such hearing is required where all essential evidence is already of record."); *see also* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings.").

After the Clerk's entry of default, a defendant is deemed to have admitted all well-pleaded factual allegations in the complaint. *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[4] However, an entry of default against the defendant does not establish that the plaintiff is entitled to a default judgment. The defendant is not deemed to admit facts that are not well-pleaded or conclusions of law. *Id*. "The Court must consider whether the unchallenged facts constitute a legitimate cause of action, since the party in default does not admit a mere conclusion of law. In considering any default judgment, the Court must consider (1) jurisdiction, (2) liability, and (3) damages." *Johnson v. Rammage*, 2007 WL 2276847, at

---

[4] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

*1 (M.D. Ga. Aug. 7, 2007) (citing *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004)).  The defendant is also not deemed to admit the plaintiff's allegations relating to the amount of damages*.  Patray v. Nw. Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996); *see also Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003) ("A court has an obligation to assure that there is a legitimate basis for any damage award it enters.").

### III. JURISDICTION

To enter a valid default judgment, the Court must have both subject matter and personal jurisdiction.  *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("When entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.").  Because the plaintiffs allege CP Security violated FLSA, the Court has subject matter jurisdiction over the plaintiffs' claims based on federal question jurisdiction.  Doc. 1 ¶¶ 1, 59-72, 87-90; 28 U.S.C. § 1331.

Moreover, the complaint sufficiently alleges that the Court has personal jurisdiction over CP Security.  General jurisdiction exists whenever the defendant is at home in the forum state.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  Specific jurisdiction, on the other hand, must arise out of the events or transactions underlying the claims that form the basis of the lawsuit.  *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).  In other words, for specific jurisdiction to be proper, "the defendant must have 'purposefully availed' itself of the privilege of conducting activities—that is, purposefully establishing contacts—in the forum state and there must be a sufficient nexus between

those contacts and the litigation." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).  Here, the plaintiffs adequately allege both general and specific jurisdiction over CP Security.  As for general jurisdiction, the plaintiffs allege CP Security "is a domestic profit corporation, incorporated under the laws of the State of Georgia" and its principal office and registered agent are in Georgia.  Doc. 1 ¶¶ 5-6.  As for specific jurisdiction, the plaintiffs allege they are residents of Georgia and they "were and are employed and the events underlying this action occurred in Macon, Bibb County, Georgia."  *Id*. ¶¶ 2-3.  In sum, the Court has both subject matter and personal jurisdiction over this case.

## IV. DISCUSSION[5]

### A. FLSA Overtime (Grable, Redding, Robinson, and Finnell)

*1. Violation*

"Under the FLSA, an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate."  *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); 29 U.S.C. § 207(a)(1).  "An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work."  *Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015).

---

[5] FLSA applies to employers "engaged in commerce or in the production of goods for commerce."  *See* 29 U.S.C. § 207(a)(1).  Because the plaintiffs allege CP Security "is a covered employer, enterprise, and person within the meaning of" FLSA, CP Security "is a private employer engaged in interstate commerce," and "[p]laintiffs were considered covered, non-exempt employees under" FLSA, CP Security is subject to FLSA.  Doc. 1 ¶¶ 4, 7-8.

The plaintiffs allege they "frequently worked in excess of forty (40) hours per workweek" and CP Security "failed to pay [them] at the overtime rate for hours worked in excess of forty (40) hours per workweek."  Doc. 1 ¶¶ 47, 63-64.  The plaintiffs further allege CP Security "knew that [the plaintiffs] worked in excess of forty (40) hours per workweek" and "knew that [the plaintiffs] were not compensated at the appropriate rate of overtime."  *Id*. ¶¶ 48-50, 68-69.  The plaintiffs' testimony confirms these allegations.  Docs. 60-1 ¶¶ 14-27; 63 ¶¶ 14-22; 63-1 ¶¶ 14-25; 63-2 ¶¶ 14-28.  Accordingly, CP Security violated FLSA's overtime compensation requirements.

*2. Statute of Limitations*

An action to recover unpaid overtime compensation under FLSA is subject to a two-year statute of limitations, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  The plaintiffs filed this action against CP Security on March 19, 2021.  Doc. 1.  Redding and Finnell are seeking to recover unpaid overtime compensation for weeks prior to March 19, 2019.  Docs. 63 ¶¶ 20, 22; 63-2 ¶¶ 21, 24.  If Redding and Finnell seek to hold CP Security liable for its conduct prior to March 19, 2019, they must allege that CP Security willfully violated FLSA during that time.  29 U.S.C. § 255(a).

A plaintiff demonstrates a "willful violation" if he shows that the defendant "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by" FLSA.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "An employer knowingly violates [FLSA] if he disregards the [overtime compensation] laws deliberately or intentionally, such as by ignoring advice from a responsible official that the conduct in question is not lawful."  *Davila v. Menendez*, 717 F.3d 1179, 1185 (11th

Cir. 2013) (cleaned up). "An employer acts with reckless disregard for [FLSA] if the employer's conduct is more than merely negligent, and is blameworthy if the employer should have inquired further into whether his conduct was in compliance with the Act, and failed to make adequate further inquiry." *Id*. (cleaned up); *see also* 5 C.F.R. § 551.104.

The plaintiffs repeatedly allege that CP Security willfully violated FLSA. Doc. 1 ¶¶ 38, 41, 55, 71. They also specifically allege that CP Security knew FLSA's overtime compensation requirements, knew that the plaintiffs "worked in excess of forty (40) hours per workweek," and "knew that [the plaintiffs] were not compensated at the appropriate rate of overtime." *Id*. ¶¶ 67-69. Finally, the plaintiffs allege employees told CP Security they were not being properly compensated and CP Security "took affirmative measures to alter [their] records to avoid paying overtime." *Id*. ¶¶ 53, 70. Accordingly, Redding and Finnell have sufficiently alleged that CP Security willfully disregarded its obligation to pay them overtime compensation and their claims for overtime compensation violations prior to March 19, 2019 are not barred by the statute of limitations.

*3. Damages*

An employer who violates the overtime requirements of FLSA is "liable to the employee or employees affected in the amount of their … unpaid overtime compensation … and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "[L]iquidated damages are mandatory absent a showing of good faith." *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987); *Spires v. Ben Hill Cnty.*, 980 F.2d 683, 690 (11th Cir. 1993). Where there are no employer records, an employee

can prove his damages "if he produces sufficient evidence to show the amount and extent of [his] work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds as stated in Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293-94 (D.C. Cir. 1972). The plaintiffs rely on both CP Security's records and their declarations to show unpaid overtime compensation. Docs. 60-1; 63; 63-1; 63-2. The plaintiffs also allege CP Security acted in bad faith. Doc. 1 ¶¶ 41, 55, 71. The Court finds this sufficient to establish the plaintiffs' damages:[6]

Plaintiff Grable
Unpaid Overtime Compensation: $10,102.65
Liquidated Damages: $10,102.65
**Total: $20,205.30**

Plaintiff Redding
Unpaid Overtime Compensation: $10,827.20
Liquidated Damages: $10,827.20
**Total: $21,654.40**

Plaintiff Robinson[7]
Unpaid Overtime Compensation: $2,088.99
Liquidated Damages: $2,088.99
**Total: $4,177.98**

Plaintiff Finnell
Unpaid Overtime Compensation: $4,482.66
Liquidated Damages: $4,482.66
**Total: $8,965.32**

---

[6] The Court used the hours and corresponding wages provided in the plaintiffs' declarations to calculate their damages. Docs. 60-1 ¶¶ 21-27; 63 ¶¶ 20-22; 63-1 ¶¶ 23-25; 63-2 ¶¶ 20-28. Spreadsheets of those calculations are contained within the Court's exhibit 1. However, the Court did not use the *total* hours provided by the plaintiffs in their declarations or the total damages in their proposed order due to inaccuracies. *See, i.e.,* Docs. 63 ¶ 21 (calculating 140.61 hours as 54.05 hours); 63-1 ¶ 24 (calculating 1,923.53 hours as 1,927.53 hours); 70 at 10-11 (incorrect overtime damages for each plaintiff).

[7] Robinson included hours for the workweeks of July 19, 2021, August 2, 2021, and August 16, 2021 twice—one time stating the hours were based on time records and the other time stating "no records" were available. Doc. 60-1 ¶¶ 21(d), 21(f)-(g), 26(a)-(c). The Court only counted the hours based on time records. *Id.* ¶¶ 21(d), 21(f)-(g).

**B. FLSA Retaliation (Grable and Redding)**

*1. Violation*

FLSA's anti-retaliation provision makes it unlawful for employers "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  "A prima facie case of FLSA retaliation requires a demonstration by the plaintiff of the following: '(1) [he] engaged in activity protected under [the] act; (2) [he] subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action.'"  *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (quoting *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir. 1997)).  The Eleventh Circuit has held that ""unofficial complaints … constitute an assertion of rights protected under" FLSA and "[a] reduction in an employee's hours, which reduces the employee's take-home pay, qualifies as a tangible employment action."  *E.E.O.C. v. White and Son Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989); *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006).

After Grable and Redding complained about their overtime compensation to CP Security's founder, owner, and CEO, and after they filed this lawsuit, their hours were reduced.  Docs. 1 ¶¶ 20-26, 29; 63-1 ¶¶ 17-19, 26-28; 63-2 ¶¶ 29-32.  Redding was eventually terminated in May 2022.  Doc. 63-2 ¶ 33.  Accordingly, CP Security retaliated against Grable and Redding in violation of FLSA.

*2. Damages*

An employer who violates FLSA's anti-retaliation provision is "liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) … of this title, including … the payment of wages lost and an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The award of liquidated damages for a FLSA retaliation violation is not mandatory.  *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1243 (11th Cir. 2013).  The purpose of FLSA's anti-retaliation provision is to provide plaintiffs with compensation and deter employers from future violations.  *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 935 n.13 (11th Cir. 2000).  Grable and Redding request the payment of lost wages.  Docs. 63-1 ¶ 30; 63-2 ¶ 35.

Grable testified that after he complained about his overtime compensation and filed this lawsuit, his hours were reduced in early 2021 and eventually he was "taken off the schedule completely in March 2021."  Doc. 63-1 ¶¶ 27-28.  He did not find subsequent employment until October 2021.  *Id*. ¶ 29.  Thus, he did not receive compensation for "approximately 29.6 weeks."  *Id*. ¶ 30.  Based on Grable's average hours and wage at CP Security, this resulted in $21,195.08 in lost wages ($716.05/week x 29.6 weeks).  *Id*.

Redding testified that after he complained about his overtime compensation and filed this lawsuit, his hours were reduced and "[i]n or around September 2021, CP Security stopped assigning [him] to work shifts."  Doc. 63-2 ¶ 31-32.  "In May 2022, even though [he] was not actively working, [he] was terminated."  *Id*. ¶ 33.  He found subsequent employment in May 2022.  *Id*. ¶ 34.  Thus, he did not receive compensation for "approximately 37 weeks."  *Id*. ¶ 35.  Based on Redding's average hours and wage

at CP Security, this resulted in $19,084.60 in lost wages ($515.80/week x 37 weeks). The Court finds this award of lost wages sufficient and "appropriate to effectuate the purposes of" FLSA's anti-retaliation provision.  See 29 U.S.C. § 216(b).[8]

## C. Attorney's Fees

The plaintiffs also seek an award of attorney's fees and costs.  Doc. 57 at 7. Under FLSA, "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and costs of the action."  29 U.S.C. § 216(b).  A reasonable attorney's fee has two components: (1) a reasonable amount of hours spent on the case, and (2) a reasonable hourly rate.  *In re Home Depot, Inc.*, 931 F.3d 1065, 1076 (11th Cir. 2019).  A "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  "The party seeking attorney's fees bears the burden of producing 'satisfactory evidence that the requested rate is in line with prevailing market rates.'"  *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (quoting *Norman*, 836 F.2d at 1299).

The plaintiffs have presented evidence of their attorney's fees and costs through an affidavit submitted by counsel.  Docs. 64; 71.  Plaintiffs' counsel spent about 204 hours on this case.  Doc. 71 ¶¶ 3-7.  The hourly rate of plaintiffs' counsel's paralegals is $95.00 and the hourly rate of plaintiffs' counsel ranges from $105.00 to $250.00.  Doc. 64 ¶ 16.  Moreover, plaintiffs' counsel testified that "[t]hese rates are consistent with

---

[8] Grable and Redding did not move for liquidated damages for their retaliation claims.  *See generally* Doc. 57.  Even if they had, the Court would still find that its award is sufficient and "appropriate to effectuate the purposes of" FLSA's anti-retaliation provision.  *See* 29 U.S.C. § 216(b).

market rates in the area … in correlation to similarly-situated attorneys and firms." *Id*. ¶ 17.  In total, the plaintiffs seek $36,658.25 in attorney's fees and costs for hours spent litigating this case.  Docs. 64; 71.  Based on the evidence and the Court's knowledge and experience of reasonable hourly rates in the relevant area, the Court finds that the fees and expenses the plaintiffs incurred were reasonable.  Accordingly, the plaintiffs are entitled to fees and costs totaling $36,658.25.[9]

## V. CONCLUSION

For the above reasons, the plaintiffs' motion for default judgment (Doc. 57) is **GRANTED** as to Grable, Redding, Robinson, and Finnell.  Those plaintiffs are entitled to damages and attorney's fees and costs in the amounts below:

<u>Plaintiff Grable</u>
Overtime Damages:         $20,205.30
Retaliation Damages:      $21,195.08
**Total:**                **$41,400.38**

<u>Plaintiff Redding</u>
Overtime Damages:         $21,654.40
Retaliation Damages:      $19,084.60
**Total:**                **$40,739.00**

<u>Plaintiff Robinson</u>:        **$4,177.98**

<u>Plaintiff Finnell</u>:         **$8,965.32**

<u>Attorney's Fees and Costs</u>:  **$36,658.25**

In sum, default judgment is entered against CP Security totaling $131,940.93 plus post-judgment interest as provided by law.  Failure to comply with this order may

---

[9] Pursuant to the Court's instructions, plaintiffs' counsel submitted a revised declaration in support of an award of fees and costs, removing any expenses related to Hollingshead, Wilson, Young, Smith, and Mitchell.  Doc. 71.  The Court's calculations are contained within the Court's exhibit 1.

result in sanctions including a finding of contempt. Hollingshead, Smith, Wilson, and Young are **DISMISSED without prejudice**.

    **SO ORDERED**, this 13th day of March, 2024.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
